## Case No. 6,087.

### HARPER v. DOUGHERTY et al.

[2 Cranch, C. C. 284.] [1]

Circuit Court, District of Columbia. May 7, 1822.

EQUITY—EFFECT OF RESPONSIVE ANSWER — SALE OF A CHATTEL—SPECIFIC PERFORMANCE OF CONTRACT.

1. To constitute a valid sale so as to change the property in a chattel, there must be a certain price agreed upon, and the thing must be delivered, except in the case of a vessel at sea.

2. The answer, so far as it is responsive to the allegations in the bill, is conclusive evidence, unless contradicted by two witnesses.

3. Quaere, whether a court of equity can or ought to decree the specific execution of a contract for the sale of personal goods in any case whatever.

Bill in equity by Samuel Harper against Daniel Dougherty, John McPherson, Daniel McPherson, John McPherson, Jr., Thomas Tuley, and Nathaniel S. Wise. It states that the plaintiff, in March, 1819, purchased of John McPherson & Son, (who were the said John McPherson and Daniel McPherson, carrying on the business of tanning leather under the firm of John McPherson & Son) a quantity of sole-leather to the amount of $2,243.99 then lying in the vats; that it was not delivered because it was not entirely in a state to be removed, and J. M. & Son, were by agreement to complete the leather and deliver it to the plaintiff. That the sale was bona fide; and that J. M. & Son received a valuable and full consideration for the same. That they afterwards failed in business. That John McPherson, Jr. set up a claim to the leather and took possession of it. That he is a man of desperate circumstances, and entirely without property, or the means of paying the plaintiff. That Daniel Dougherty, knowing of the plaintiff's claim, purchased the leather of John McPherson, Jr. but has not paid for it. That J. M., Jr. refuses to deliver up the leather to the plaintiff. The bill then prays an injunction, and that the money in Dougherty's hands may be applied to pay the plaintiff; and for general relief. A supplemental bill states that Dougherty had conveyed the leather by a deed of trust to N. S. Wise to secure the payment of his (Dougherty's) two notes to J. M., Jr. for $1,750 each, and prays that Wise may be made a defendant, and that the plaintiff may have the benefit of the trust, and that the property may be sold to pay the plaintiff's claim. The answer of Daniel McPherson denies that he or any of the firm of J. M. & Son, ever made the sale of sole-leather to the plaintiff, which is charged in the bill; or ever entered into any contract with the plaintiff whereby this defendant or the said firm became bound to deliver to the plaintiff any quantity of sole-leather. The answer of

[1] [Reported by Hon. William Cranch, Chief Judge.]

Dougherty admits that he had notice of the plaintiff's claim when he purchased the leather of J. M., Jr. The answer of John McPherson, Jr. states that J. M. & Son, being indebted to him in the sum of $3,201.68 in April, 1818, engaged to deliver him one thousand Spanish hides manufactured into merchantable sole leather. That in April, 1819, Daniel McPherson gave him possession of whatever hides then remained in the tan-yard in part liquidation of his claim for one thousand dollars, and that he sold them to Dougherty for $4,500, and they were delivered to him by Tuley by the authority of this defendant.

Mr. Mason and Mr. Jones, for plaintiff.
Mr. Swann and Mr. Wise, for defendants.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, absent). The questions arising in this case are: (1) Was there a complete sale of the leather, so as to change the property, and vest it in the plaintiff? If not, then (2) Was there such a contract for the sale and delivery of the leather as a court of equity will enforce? If not, then (3) Whether there was any contract which gave the plaintiff a specific lien on any, and what quantity of leather. (4) If there was any such sale or contract with Daniel McPherson, or with J. M. & Son, then the title of J. McPherson, Jr. must be examined, because he dates his title in April, 1818, one year before the plaintiff's? (5) If the plaintiff is entitled to any decree in his favor, shall it be for a specific delivery of the leather, or for as much money in Dougherty's hands as will satisfy the plaintiff's claim?

1. To constitute a valid sale of a chattel, so as to change the property, there must be a certain price agreed upon, and the thing must be delivered; except in the case of a vessel at sea, when the transfer is made by the grand bill of sale. In the present case the sale is expressly denied by the answer, which is evidence, and conclusive, unless contradicted by two witnesses to the same point. And it is contended that this answer is contradicted by two witnesses; but this will be considered hereafter, if necessary. By the plaintiff's own showing in the bill, no price was fixed to the leather, and it was not delivered. If, therefore, there was any contract about the leather, it was not such a sale as transferred the property to the plaintiff.

2. Was there such a contract for the sale and delivery of the leather as a court of equity will enforce? This question may be divided. 1st. Was there a contract for the sale and delivery of the leather? and 2d. If there was, can a court of equity decree a specific performance? First, was there a contract for the sale and delivery of the leather? The bill states the affirmative. The answer positively denies it; and the plaintiff has produced no evidence of such a contract. It is true that Mr. Rinker and Mr. Litle testify that Daniel McPherson admitted that the hides which J. M., Jr. claimed were the identical hides which he (D. M.) had sold to the plaintiff; and Mr. Rinker adds, that he understood D. M. as admitting distinctly that he had sold the hides as charged by the plaintiff, and as denying that they were actually transferred to J. M., Jr. The latter circumstance is not noticed by Mr. Litle; but he says that D. M. "added that he did not, at the time, intend to deliver them to said Harper." It may be observed, that these affidavits appear to have been taken ex parte, and without notice to the defendants. There was no cross-examination. The point of the question, which appears to have been put to D. M. in the presence of the committee of the monthly meeting, was respecting the identity of the hides, and not the sale, or the terms of the sale. Neither the price nor the quantity of the leather was mentioned; nor is there the least evidence on that subject. The sale which was spoken of at the meeting might have been the sale which is stated in the defendant D. M.'s answer, which was abandoned, and which is admitted in the plaintiff's affidavit. Admitting, however, that the answer of D. M. is contradicted by two witnesses, yet the plaintiff has failed to prove the terms of the contract. There is no evidence of the quantity of leather sold, nor of the price; nor of the amount due to the plaintiff. What is there, then, for the court to enforce? It cannot make contracts for the parties; nor can it enforce contracts not proved.

3. There is no evidence of any other contract, which gave the plaintiff any specific lien on any quantity of leather. The plaintiff having failed to show any contract which would entitle him to relief in a court of equity, it becomes unnecessary to inquire into the validity of the title of John McPherson, Jr. or of Daniel Dougherty; or to consider the question whether a court of equity can, or ought, in any case, to decree the specific execution of a contract for the sale of personal goods. Bill dismissed, with costs.